# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA KUPFNER, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>v.<br><br>ALTICE USA, INC., ALTICE EUROPE N.V. (f/k/a ALTICE N.V.), PATRICK DRAHI, JÉRÉMIE JEAN BONNIN, ABDELHAKIM BOUBAZINE, MICHEL COMBES, DAVID P. CONNOLLY, DEXTER G. GOEI, VICTORIA M. MINK, MARK CHRISTOPHER MULLEN, DENNIS OKHUIJSEN, LISA ROSENBLUM, CHARLES F. STEWART, RAYMOND SVIDER, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, MORGAN STANLEY & CO. LLC, CITIGROUP GLOBAL MARKETS INC., MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., BARCLAYS CAPITAL INC., BNP PARIBAS SECURITIES CORP., CREDIT AGRICOLE SECURITIES (USA) INC., DEUTSCHE BANK SECURITIES INC., RBC CAPITAL MARKETS, LLC, SCOTIA CAPITAL (USA) LLC, SG AMERICAS SECURITIES LLC, and TD SECURITIES (USA) LLC,<br>                    Defendants. | Case No. _____<br><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Joshua Kupfner ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of United States Securities and Exchange Commission ("SEC") filings by Altice USA, Inc. ("Altice USA" or the "Company"), wire and press releases published by and regarding Altice USA, its former controlling parent Altice Europe N.V. (f/k/a Altice N.V., thereafter "Altice Europe" and together with Altice USA, "Altice"), analyst reports about the Company, and information readily obtainable from public sources. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.     NATURE AND SUMMARY OF THE ACTION

1.     Plaintiff brings this action under §§ 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), on behalf of all persons and entities, other than Defendants, who purchased or otherwise acquired the publicly traded securities of Altice USA pursuant and/or traceable to the Company's initial public offering taking place in June 2017 (the "IPO") seeking to recover compensable damages caused by Defendants' violations of the Securities Act.

2.     This action asserts strict liability claims under Sections 11, 12(a)(2) and 15 of the Securities Act against Altice, certain current and former Altice USA officers and directors, and the underwriters of the IPO. These claims specifically exclude any allegations of fraud, knowledge, recklessness or scienter, do not "sound in fraud' and are based solely on strict liability and negligence.

2

3.      The claims in this action arise from the materially misleading Registration Statement and Prospectus (collectively the "Offering Documents," defined infra) issued in connection with the IPO. In the IPO, Defendants offered 71,724,136 shares of common stock at a price to the public of $30.00 per share. The Company received net proceeds of approximately $362 million before deducting underwriting discounts and commissions.

4.      As further described below, the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact and omitted to state material facts both required by governing regulations and necessary to make the statements made not inaccurate statements of material fact. Specifically, the Offering Documents failed to disclose and/or misstated material information, including that:

(1)     "The Altice Way" proprietary growth model previously developed in Europe and described in the Offering Documents as a means to achieve superior margin performance was falsely touting Altice's capacity to face already existing highly competitive environments and ever-changing consumer behaviors,

(2)     Altice was suffering from aggressively growing competition both in Europe and the United States, directly causing negative and decelerating revenue and EBITDA growth and impacting Altice's market share,

(3)     Specifically, Altice was suffering from mismanaged rate events, regulatory compliance and poorly managed network and customer care both in its France and Portugal segments, thereby impacting its customer base and churn rate,

(4)     Altice USA could not simply replicate the "The Altice Way" in the U.S.

(5)     As a result, Altice USA's Offering Documents were materially misleading at all relevant times.

5.     Consequently, as of the filing of this complaint, Altice's common stock trades around $17 per share, *a decline of more than 43 percent from its IPO price to the public of $30.00 per share*.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## II.     <u>JURISDICTION AND VENUE</u>

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 22 of the Securities Act, 15 U.S.C. §77v. The claims asserted herein arise under §§ 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l and 77o. In connection with the acts, conduct and other wrongs alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the U.S. mails, and interstate telephone communications.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and § 22 of the Securities Act because, in connection with the acts, conduct and other wrongs alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the U.S. mails, and interstate telephone communications.

III.     **PARTIES**

A.     **Plaintiff**

9.     Plaintiff Joshua Kupfner purchased Altice USA common stock pursuant and/or traceable to the Company's Registration Statement for the IPO and, as a result, was damaged thereby.

B.     **Defendants**

1.     **The Company**

10.     Defendant Altice USA is a Delaware corporation with its principal executive offices located at 1 Court Square West Long Island City, New York 11101. The Company's common stock is listed and trades on the New York Stock Exchange ("NYSE") under the ticker symbol "ATUS."

11.     Defendant Altice Europe was formally known as Altice N.V. prior to June 8, 2018. Altice Europe is a multinational cable, fiber, telecommunications, content, media and advertising company founded and controlled by Defendant Patrick Drahi.

2.     **The Individual Defendants**

12.     Defendant Patrick Drahi ("Drahi") founded Altice N.V. and majority-owned and controlled Altice N.V. Drahi was at the time of the IPO, the Chairman of Altice Europe Board of Directors and its Chief Executive Officer ("CEO"). Defendant Drahi built the Altice family of companies from a regional French cable company founded in 2002. Defendant Drahi is now Executive Director of Altice Europe N.V. and Chairman of Altice USA.

13.     Defendant David Connolly ("Connolly") has served, at all relevant times, as the Executive Vice President, General Counsel and Secretary of Altice USA. Connolly participated in

preparing the Offering Documents which he signed pursuant to the requirements of the Securities Act of 1933.

14.     Defendant Lisa Rosenblum ("Rosenblum") serves as Vice Chairman of Altice USA. Defendant Rosenblum participated in preparing the Offering Documents, which she signed pursuant to the requirements of the Securities Act of 1933.

15.     Defendant Dexter Goei ("Goei") has served, at all relevant times, as the Company's Chairman and CEO. Goei participated in preparing the Offering Documents, which he signed pursuant to the requirements of the Securities Act of 1933.

16.     Defendant Charles Stewart ("Stewart") has served, at all relevant times, as the Company's Director, Co-President and Chief Financial Officer ("CFO"). Stewart participated in preparing the Offering Documents, which he signed pursuant to the requirements of the Securities Act of 1933.

17.     Defendant Victoria Mink ("Mink") has served, at all relevant times, as the Senior Vice President and Chief Accounting Officer ("CAO"). Mink participated in preparing the Offering Documents, which she signed pursuant to the requirements of the Securities Act of 1933.

18.     Defendant Abdelhakim Boubazine ("Boubazine") has served, at all relevant times, as the Director, Co-President and Chief Operating Officer ("COO"). Boubazine participated in preparing the Offering Documents, which he signed pursuant to the requirements of the Securities Act of 1933.

19.     Defendants Goei, Stewart, Mink and Boubazine are collectively referred to as the "Officer Defendants."

20.     Defendant Michel Combes ("Combes") was a Director of Altice USA until November 9, 2017. Defendant Combes reviewed, edited, contributed to, and was identified as an incoming director in the Offering Documents.

21.     Defendant Jeremie Bonnin ("Bonnin") is a Director of Altice USA. Defendant Bonnin reviewed, edited, contributed to, and was identified as an incoming director in the Offering Documents.

22.     Defendant Dennis Okhuijsen ("Okhuijsen") is a Director of Altice USA. Defendant Okhuijsen reviewed, edited, contributed to, and was identified as an incoming director in the Offering Documents.

23.     Defendant Raymond Svider ("Svider") is a Director of Altice USA. Defendant Svider reviewed, edited, contributed to, and was identified as an incoming director in the Offering Documents. Defendant Svider is also the Co-Chairman and a Managing Partner of BC Partners Inc., a shareholder that sold over 36 million shares in the IPO.

24.     Defendant Mark Mullen ("Mullen") is a Director of Altice USA. Defendant Svider reviewed, edited, contributed to, and was identified as an incoming director in the Offering Documents. Defendant Svider is also the Co-Chairman and a Managing Partner of BC Partners Inc., a shareholder that sold over 36 million shares in the IPO.

25.     Defendants Combes, Bonnin, Okhuijsen, Svider and Mullen are collectively referred to herein as the "Director Defendants."

26.     The Officer Defendants, the Director Defendants, Defendant Drahi, Defendant Connolly and Defendant Rosenblum are collectively referred to as the "Individual Defendants."

27.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company; and/or

(b)     was directly involved in the day-to-day operations of the Company at the highest levels; and/or

(c)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the untrue and misleading statements and information alleged herein; and/or

(d)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls; and/or

(e)     approved or ratified these statements in violation of the federal securities laws.

28.     Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about Altice USA's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Each Individual Defendant participated in the preparation of and/or signed the Offering Documents.  Altice and the Individual Defendants are strictly liable for the materially untrue and misleading statements incorporated into the Offering Documents.

### 3.  <u>The Underwriter Defendants</u>

29.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") was one of the representatives of the IPO underwriters. J.P. Morgan assisted in the preparation and dissemination of the materially untrue and misleading Offering Documents.

30.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") was one of the representatives of the IPO underwriters. Morgan Stanley assisted in the preparation and dissemination of the materially untrue and misleading Offering Documents.

31.     Defendant Citigroup Global Markets Inc. ("Citigroup") was one of the representatives of the IPO underwriters. Citigroup assisted in the preparation and dissemination of the materially untrue and misleading Offering Documents.

32.     Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") was one of the representatives of the IPO underwriters. Goldman Sachs assisted in the preparation and dissemination of the materially untrue and misleading Offering Documents.

33.     Defendant Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") was an underwriter of Altice's IPO. Merrill Lynch assisted in the preparation and dissemination of the materially untrue and misleading Offering Documents.

34.     Defendant Barclays Capital Inc. ("Barclays") was an underwriter of Altice's IPO. Barclays assisted in the preparation and dissemination of the materially untrue and misleading Offering Documents.

35.     Defendant BNP Paribas Securities Corp. ("BNP Paribas") was an underwriter of Altice's IPO. BNP Paribas assisted in the preparation and dissemination of the materially untrue and misleading Offering Documents.

36.     Defendant Credit Agricole Securities (USA) Inc. ("Credit Agricole") was an underwriter of Altice's IPO. Credit Agricole assisted in the preparation and dissemination of the materially untrue and misleading Offering Documents.

37.     Defendant Deutsche Bank Securities Inc. ("Deutsche Bank") was an underwriter of Altice's IPO. Deutsche Bank assisted in the preparation and dissemination of the materially untrue and misleading Offering Documents.

38.     Defendant RBC Capital Markets, LLC ("RBC Capital") was an underwriter of Altice's IPO. RBC Capital assisted in the preparation and dissemination of the materially untrue and misleading Offering Documents.

39.     Defendant Scotia Capital (USA) Inc.  ("Scotia Capital") was an underwriter of Altice's IPO. Scotia Capital assisted in the preparation and dissemination of the materially untrue and misleading Offering Documents.

40.     Defendant SG Americas Securities LLC ("SG Americas") was an underwriter of Altice's IPO. SG Americas assisted in the preparation and dissemination of the materially untrue and misleading Offering Documents.

41.     Defendant TD Securities (USA) LLC ("TD Securities") was an underwriter of Altice's IPO. TD Securities assisted in the preparation and dissemination of the materially untrue and misleading Offering Documents.

42.     The Defendants named in paragraphs 29-41 are collectively referred to as the "Underwriter Defendants."

43.     Pursuant to the Securities Act, the Underwriter Defendants are liable for the materially untrue and misleading statements in the Offering Documents. The Underwriter Defendants assisted Altice and the Individual Defendants in planning the IPO and were required to conduct an adequate and reasonable investigation into the business and operations of Altice — a process known as a "due diligence" investigation. The Underwriter Defendants were required to conduct a due diligence investigation in order to participate in the IPO. During the course of their

due diligence investigation, the Underwriter Defendants had continual access to confidential corporate information concerning Altice's operations and financial prospects.

44.     In addition to availing themselves of virtually unlimited access to internal corporate documents, agents of the Underwriter Defendants met with Altice's lawyers, management and top executives and made joint decisions regarding: (i) the terms of the IPO, including the price at which Altice shares would be sold to the public; (ii) the strategy to best accomplish the IPO; (iii) the information to be included in the Offering Documents; and (iv) what responses would be made to the SEC in connection with its review of the Offering Documents. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Altice's management and top executives, the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, Altice's existing problems as detailed herein.

45.     Defendants negligently allowed the Offering Documents to contain materially untrue and misleading statements and/or omissions to the extent that they knew or should have known that the Offering Documents were materially misleading, but failed to act in a reasonable manner to prevent the Offering Documents from containing materially misleading statements and/or preventing the materially misleading Offering Documents from being disseminated.

## IV.     SUBSTANTIVE ALLEGATIONS

### A.  Company Background

46.     Altice USA is a broadband communications and video services providers in the United States delivering broadband, pay television, telephony services, Wi-Fi hotspot access, proprietary content and advertising services to millions of residential and business customers. Altice USA operates through two major brands in the U.S.: Suddenlink and Optimum.

11

47.     On April 11, 2017, Altice filed a draft registration statement on Form S-1 with the SEC. The registration statement was subsequently amended five times, with the final amended registration statement on Form S-1/A filed on June 21, 2017 (collectively, the "Registration Statement"). The Registration Statement was declared effective by the SEC on June 21, 2017. Altice filed its final prospectus on Form 424B4 with the SEC on June 23, 2017 ("Prospectus"). The Registration Statement and the Prospectus are collectively referred to herein as the "Offering Documents."

48.     The IPO consisted of a public sale of 71,724,136 shares of common stock at a price to the public of $30.00 per share. Altice USA received net proceeds of approximately $362 million before deducting underwriting discounts and commissions.

### B.   The Company Goes Public by Means of the Materially Misleading Offering Documents

49.     Throughout the Offering Documents, Altice describes the superiority of the "Altice Way," a proprietary growth model developed in Europe, stating in relevant part:

> In developing and implementing our strategy, we are focused on the following principles, which are part of the Altice Way:
>
> • ***Simplify and optimize our organization*** through streamlining business processes, centralizing functions and eliminating non-essential operating expenses and service arrangements.
>
> • ***Reinvest in infrastructure and content***, including upgrading our HFC network and building out a FTTH network to strengthen our infrastructure capabilities and competitiveness.
>
> • ***Invest in sales, marketing and innovation***, including brand-building, enhancing our sales channels and automating provisioning and installation processes.
>
> • ***Enhance the customer experience*** by offering a technologically advanced customer platform combined with superior connectivity and service across the customer lifecycle.

> • **_Drive revenue and cash flow growth_** through cross-selling, market share gains, new product launches and improvements in our operating and capital efficiency.
>
> **_We believe the Altice Way, which has been successfully implemented across Altice Group, distinguishes us from our U.S. industry peers and competitors._**

Emphasis added.

50.     Similarly, the Offering Documents emphasize how the "Altice Way" will lead the Company to improve "historical growth rates, profitability and operational efficiency."

51.     The Offering Documents also emphasize Altice's competitive position and strategy, including a "customer-centric" approach. In relevant part:

> **Our Competitive Strengths**
>
> We believe the following competitive strengths have been instrumental to our success and position us for future growth and strong financial performance.
>
> \*        \*        \*
>
> **Customer-Centric Operating and Service Model Supported by Technology and Data Analytics**
>
> We seek to provide our customers with the best connectivity and service experience available. **_This customer-centric approach drives our decision-making processes and is another key component of the Altice Way. Through investments in our information technology ("IT") platforms and a focus on process improvement, we have simplified and harmonized our service offering bundles, and improved our technical service delivery and our customer service_**. We are investing in our sales channels, including enhancing our e-commerce channels in response to customer behavior. While inbound sales remain the largest sales channel for each of Optimum and Suddenlink, our e-commerce channels' share of new sales has grown substantially since the Acquisitions. We develop, monitor and analyze detailed customer metrics to identify root-causes of customer dissatisfaction and to further improve the customer experience. Taken together, we believe these initiatives will further reduce calls and service visits, increase customer satisfaction and strengthen our top-line performance and cash flow generation.

Emphasis added.

52.     The Offering Documents assure investors of the Company's competitive position because the Company benefits from "a Global Communications Group" which provides "innovation, management expertise and best practices developed and tested in other Altice Group markets such as France, Portugal."

53.     Further, throughout the Offering Documents, Altice describes the "operational efficiency" of the Company's strategy to increase "returns." For instance, in relevant part:

**Strategic Focus on Operational Efficiency**

An important principle of the Altice Way is leveraging operational efficiency in order to invest in network improvements and increase returns. We believe our focus on simplifying customer service offerings and streamlining and improving our operations through an intense focus on efficiency is unmatched by our U.S. industry peers. We continuously strive to remove unnecessary management layers, streamline decision-making processes, trim excess costs and question whether our current methodologies are indeed the most efficient. For example, the home installation, repair, outside plant maintenance and network construction elements of our business have been reorganized under Altice Technical Services ("ATS"), Altice N.V.'s services organization in the United States. We believe this reorganization will allow us to focus on our core competencies and realize operational cost efficiencies. The financial resources created by these strategies allow us to invest in network improvements and customer experience enhancements. We believe the operating and financial benefits that result from our focus on operational efficiency will continue to give us a competitive advantage against our competitors and U.S. industry peers.

54.     The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact and omitted to state material facts both required by governing regulations and necessary to make the statements made not inaccurate statements of material fact. Specifically, the Offering Documents failed to disclose and/or included materially false and/or misleading information, including that:

(1) "The Altice Way" proprietary growth model previously developed in Europe and described in the Offering Documents as a mean to achieve superior margin

14

performance was falsely touting Altice's capacity to face already existing highly competitive environments and ever-changing consumer behaviors;

(2) Altice was suffering from aggressively growing competition both in Europe and the United States, directly causing negative and decelerating revenue and EBITDA growth and impacting Altice's market share;

(3) Specifically, Altice was suffering from mismanaged rate events, regulatory compliance and poorly managed network and customer care both in its France and Portugal segments impacting its customer base and churn rate;

(4) Altice USA could not simply replicate the "The Altice Way" in the U.S.

(5) As a result, Altice USA's Offering Documents were materially misleading at all relevant times.

55.    The Offering Documents were also materially untrue and misleading because they failed to meet the requirements of Item 303 of Regulation S-K. 17 C.F.R. §229.303(a)(3)(ii). Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303(a)(3)(ii), also created a duty to disclose in the Registration Statement "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Similarly, Item 503 of SEC Regulation S-K, 17 C.F.R. §229.503, required, in the "Risk Factors" section of the Registration Statement, "a discussion of the most significant factors that make the offering speculative or risky" and requires each risk factor to "adequately describe the risk." The failure of the Registration Statement to disclose the facts identified above violated 17 C.F.R. §229.303(a)(3)(ii), because these undisclosed facts were known at the time of the IPO and would (and did) have an unfavorable impact on the Company's sales, revenues and income from continuing operations. This failure also violated 17 C.F.R.

§229.503, because these specific risks were not adequately disclosed, or disclosed at all, even though they were some of the most significant factors that made an investment in Altice USA common stock speculative or risky.

### C. The Truth Slowly Emerges

56. On November 3, 2017, during a conference call to discuss the financial results for the Company 2017 third fiscal quarter, Defendant Combes disclosed that Altice had "***seen a year-over-year deterioration in both France and Portugal in Q3 as a result of mismanaged rate events in both countries***" and that "***not everything is going right here at the moment***" (emphasis added).

57. On November 15, 2017, during the Morgan Stanley TMT Conference, Defendant Drahi admitted how "***in fact, and if we're referring to France, we never applied the Altice Way from A to Z***" (emphasis added).

58. As of the filing of this complaint, Altice's common stock trades around $17 per share, ***a decline of more than 43 percent from its IPO price to the public of $30.00 per share***.

59. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## V.   CLASS ACTION ALLEGATIONS

60. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired the Company's common stock pursuant or traceable to the Offering Documents issued in connection with the IPO, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in

which Defendants have or had a controlling interest.

61.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Altice or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. Upon information and belief, these shares are held by hundreds if not thousands of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

62.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the Defendants' respective wrongful conduct.

63.     Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

64.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class predominate over questions which may affect individual Class members, including the following:

   (a)     Whether the Securities Act was violated by the Defendants;

   (b)     Whether the Offering Documents contained untrue and misleading statements of material fact and omitted material information required to be stated therein; and,

   (c)     To what extent the members of the Class have sustained damages and the proper

measure of damages.

65.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## VI.     CLAIMS FOR RELIEF

### COUNT I
### *For Violations of Section 11 of the Securities Act Against All Defendants*

66.     This claim does not sound in fraud. Plaintiff does not allege that any Defendant acted with scienter or fraudulent intent, none of which are elements of a Section 11 claim under the Securities Act. This claim is based solely on strict liability as to Altice and the Defendants.

67.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

68.     This Count is asserted by Plaintiff on behalf of themselves and the Class against all the Defendants and is based upon Section 11 of the Securities Act, 15 U.S.C. § 77k.

69.     The Offering Documents were inaccurate and misleading, containing untrue statements of material facts, omitting to state other facts necessary to make the statements made not misleading, and omitting to state material facts required to be stated therein.

70.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omission of any material facts and were not misleading.

71.     By reason of the conduct herein alleged, each Defendant violated §11 of the Securities Act.

72. Plaintiff acquired the Company's stock pursuant and/or traceable to the IPO. Plaintiff and the Class have sustained damages. The value of the Company's common stock has declined substantially subsequent to and due to Defendants' violations.

73. At the time of their purchases of the Company's common stock, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein. Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff commenced this action. Less than three years have elapsed between the time the securities upon which this Count is brought were offered to the public and the time Plaintiff commenced this action.

74. By reason of the foregoing, Plaintiff and the other members of the Class are entitled to damages as measured by the provisions of Section 11(e), 15 U.S.C. 77k(e), from the Defendants and each of them, jointly and severally.

## COUNT II
### For Violations of Section 12(a)(2) of the Securities Act Against all Defendants

75. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

76. Defendants were sellers, offerors, and/or solicitors of purchasers of the Altice securities offered pursuant to the IPO. Defendants issued, caused to be issued, and signed the Offering Documents in connection with the IPO. The Offering Documents were used to induce investors, such as Plaintiff and the other members of the Class, to purchase Altice securities.

77. The Offering Documents contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted material facts

required to be stated therein. Defendants' actions of solicitation included participating in the preparation of the materially untrue and misleading Offering Documents.

78.     Plaintiff and the other Class members did not know, nor could they have known, of the untruths or omissions contained in the Offering Documents.

79.     The Defendants were obligated to make a reasonable and diligent investigation of the statements contained in the Offering Documents to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading. None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were accurate and complete in all material respects. Had they done so, these Defendants could have known of the material misstatements and omissions alleged herein.

80.     By reason of the conduct alleged herein, Defendants violated §12(a)(2) of the Securities Act. As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased Altice shares pursuant to the Offering Documents sustained substantial damages in connection with their purchases of the shares. Accordingly, Plaintiff and the other members of the Class who hold shares issued pursuant to the Offering Documents have the right to rescind and recover the consideration paid for their shares, and hereby tender their shares to Defendants sued herein. Class members who have sold their shares seek damages to the extent permitted by law.

81.     This claim was brought within one year after discovery of the untrue statements and omissions in the Offering Documents and within three years after Altice securities were sold to the Class in connection with the IPO.

## COUNT III
### *For Violations of Section 15 of the Securities Act Against the Individual Defendants*

82.    Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein. This Count is brought pursuant to §15 of the Securities Act against the Individual Defendants.

83.    The Individual Defendants each were control persons of the Company by virtue of their positions as directors and/or senior officers of the Company.

84.    The Individual Defendants were each culpable participants in the violation of §11 of the Securities Act, alleged in Count I above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process that allowed the IPO to be successfully completed.

85.    None of the Individual Defendants made reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Prospectus and Registration Statement were accurate complete in all material respects. Had they exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.

86.    This claim was brought within one year after the discovery of the untrue statements and omissions in the Offering Documents and within three years after the Company's securities were sold to the Class in connection with the IPO. It is therefore timely.

87.    By reason of the above conduct, for which the Company's is primarily liable, as set forth above, the Individual Defendants are jointly and severally liable with and to the same extent as the Company's pursuant to Section 15 of the Securities Action, 15 U.S.C. 77o.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action, certifying Plaintiff as

21

class representative and Plaintiff's counsel as class counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding rescission or a rescissory measure of damages;

(d)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(e)     Such other and further relief as the Court may deem just and proper.

## VII.   JURY TRIAL DEMANDED

88.    Plaintiff hereby demands a jury trial.


Dated: November 19, 2018                    /s/ Eduard Korsinsky
                                            **LEVI & KORSINSKY, LLP**
                                            Eduard Korsinsky
                                            55 Broadway, 10th Floor
                                            New York, NY 10006
                                            Tel: (212) 363-7500
                                            Fax: (212) 363-7171
                                            Email:ek@zlk.com

**CERTIFICATION OF NAMED PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS**

I, Joshua Kupfner, duly certify and say, as to the claims asserted under the federal securities laws, that:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3. I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. My transaction(s) in Altice USA, Inc. which are the subject of this litigation during the class period set forth in the complaint are set forth in the chart attached hereto.

5. Within the last 3 years, I have not sought to serve nor have I served as a class representative in any federal securities fraud case.

6. I will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this November 15, 2018.

Name: Joshua Kupfner

Signed:

**Schedule A**

**Joshua Kupfner**
**Transactions in Altice USA, Inc. (ATUS) Securities**
**Pursuant and/or traceable to the Company's June 2017 initial public offering (IPO)**

| Date of Transaction | Acc #1 | | |
| --- | --- | --- | --- |
| | Buy (B) or Sell (S) | Quantity | Price ($) |
| 6/22/2017 | B | 50 | 29.565 |